**Herlinda SILVA, Appellant,**

v.

**SPOHN HEALTH SYSTEM COR-PORATION d/b/a Spohn Hospital, Appellee.**

No. 13–96–082–CV.

Court of Appeals of Texas, Corpus Christi.

June 12, 1997.

Rehearing Overruled July 24, 1997.

Jerry J. Trevino, Thomas M. Schumacher, Corpus Christi, for Appellant.

Ben A. Donnell, Clay E. Coalson, Carlos A. Mattioli, Richard A. McNitzky, Meredith, Donnell & Abernethy, Corpus Christi, for Appellee.

Before SEERDEN C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Herlinda Silva appeals the trial court's granting of a motion for summary judgment in favor of appellee, the operator of Spohn Hospital in Corpus Christi, Texas, in her premises liability suit. We will reverse the trial court's grant of summary judgment.

## Facts

On July 5, 1994, appellant filed her original petition against appellee, alleging premises liability theories based on a stabbing which occurred on September 9, 1993. The undisputed facts are as follows: appellant was employed with the evening cleaning crew at Spohn Hospital; appellee required its evening employees to exit through a single unlocked exit; when appellant exited Spohn Hospital on the evening of September 9, 1993, no security personnel were patrolling the vicinity of the exit; appellant was stabbed as she left Spohn Hospital and was entering the automobile in which she was to be given a ride home. In her deposition, taken March 21, 1995, appellant testified that, at the moment she was stabbed, she was *standing on the curb which adjoined the street and appellee's property.*

On October 3, 1995, appellee filed its motion for summary judgment, alleging its entitlement to judgment as a matter of law, based on appellant's assertion that she was standing on the curb. Appellee's motion for summary judgment focused upon the "duty" element of the appellant's tort cause of action, urging that it did not own, occupy, or otherwise control the property where the assault occurred. Appellee's summary judgment proof consisted of appellant's deposition testimony.

Appellant's response to the motion for summary judgment included the following evidence:

- Affidavit of Norman Bottom [1], an unchallenged expert in the field of premises security, who opined that (1) Spohn Hospital was located in a "high crime" area, (2) the risk of attacks on health care employees—the majority of whom are female—is foreseeable, (3) appellee's policy of maintaining only one nighttime exit created a predictable pattern of pedestrian traffic, (4) appellee's security practices were substandard, and (5) appellee's security failures caused appellant's stabbing incident;
- Excerpts from the deposition testimony of appellee's employees charged with security oversight, basically establishing that appellee recognized the need for security measures at its complex;
- Excerpts from the deposition testimony of Ross Purdy, a sociology professor with Texas A & M University in Corpus Christi, who opined that Spohn Hospital was located in a high crime area; and
- Deposition testimony of appellant.

Summary judgment was granted on October 27, 1995. This appeal ensued. On appeal, Silva brings three points of error. The first point contends that "the trial court erred in granting summary judgment ... since genuine issues of material fact existed and appellee failed to prove as a matter of law that it did not owe a duty to appellant." The second point complains that "appellee failed to prove as a matter of law that it was not negligent." Appellant complains by her third point that "appellee failed to prove that it was entitled to judgment as a matter of law."

## Standard of review

Summary judgments are reviewed in accordance with the following standards: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23–24 (Tex.1990); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We note that, to establish entitlement to a summary judgment, a moving defendant has the burden of conclusively proving its defense as a matter of law. *Odeneal v. Van Horn,* 678 S.W.2d 941, 941 (Tex.1984).

## Controlling law

■ The essential elements of an action based on negligence, as in the instant case,

---

1. The supreme court has characterized Dr. Bottom as a "security expert." *See Havner v. E–Z*

*Mart Stores, Inc.,* 825 S.W.2d 456, 459 (Tex. 1992).

are: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; and, (3) damages proximately resulting from that breach. *See, generally, El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Duty is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed him by the defendant to establish liability in tort. *Id.*

■■■ Landowners and occupiers owe varying duties of care to visitors on their land, depending on the legal status of the visitor. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex.1996)(citing *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.)). We also note that a nonowner of property may potentially owe tort duties, coextensive with those of an owner, if the nonowner exercises control of property. *See, e.g., Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex.1993) ("A lessee is responsible for those areas adjacent to the demised premises which it actually controls."); *Hernandez v. Heldenfels*, 374 S.W.2d 196, 198 (Tex.1963). Right of control is thus one of the factors that determines whether a legal duty should be imposed. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

■■■ An "invitee" is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. *Texas Power & Light Co. v. Holder*, 385 S.W.2d 873, 885 (Tex.Civ.App.—Tyler 1964), *writ ref'd n.r.e.*, 393 S.W.2d 821 (Tex. 1965). Appellant fits within the foregoing definition, and we consider her an invitee as to Spohn Hospital.

■■■ As a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control. *El Chico Corp.*, 732 S.W.2d at 313; *Nixon*, 690 S.W.2d at 550. An exception to this rule exists when criminal conduct is the foreseeable result of a tortfeasor's negligence. *Lefmark Mgmt. Co. v. Winona Old*, 946 S.W.2d 52, 53 (Tex.,

1997). In such a case, the defendant has a duty to prevent injuries to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. *El Chico Corp.*, 732 S.W.2d at 314; *Nixon*, 690 S.W.2d at 550.

■■■ "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989); *Nixon*, 690 S.W.2d at 550–51." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). An owner or occupier is charged with the

> duty to protect invitees on the premises from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. [*Nixon*, 690 S.W.2d at 550.] This duty developed out of the premise that the party with the 'power of control or expulsion' is in the best position to protect against the harm, and when that party 'by reason of location, mode of doing business, or observation or past experience, should reasonably anticipate criminal conduct on the part of third persons, . . . (that party) has a duty to take precautions against it.' *Morris v. Barnette*, 553 S.W.2d 648, 649–50 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.).

*Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993).

■■■ Thus, if criminal acts of third parties are reasonably foreseeable, the owner or occupier is *required* to undertake definite precautions on behalf of its invitees. *See, e.g., Kendrick v. Allright Parking*, 846 S.W.2d 453, 458 (Tex.App.—San Antonio 1992, writ denied) ("[B]ecause of the special relationship between an invitor and invitee, the invitor . . . owes a duty to offer some protection to his invitee, even when he has no reason to anticipate criminal acts, in situations in which he observes criminal activity occurring or about to occur."); *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 625 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) ("Liability for injuries may arise from the failure of the proprietor to exercise rea-

sonable care to discover that such acts by third persons are occurring, or are likely to occur, coupled with the failure to provide reasonable means to protect his patrons from the harm or to give a warning adequate to enable the patrons to avoid the harm.").

■ Although the issue of foreseeability, as an element of duty[,] may frequently be determined as a matter of law, in some instances it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution. *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.[1990]), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990). In such cases, it is properly submitted to the trier of fact. *Id.; Bennett v. Span Industries, Inc.*, 628 S.W.2d 470, 474 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). *See also Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991).

*Kendrick*, 846 S.W.2d at 458.

Because appellee contends that the sidewalk upon which appellant was stabbed is, actually, part of the city street (which appellee contends must absolve it of any potential liability), we note that

[n]umerous cases in Texas have held that the owner or occupant of premises abutting a highway must exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel and that the owner or occupant is liable for any injury that proximately results from any breach of this duty. *See, e.g., Atchison v. Texas & P. Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228 (1945). In *Atchison*, the owner of a private premises abutting on or near a highway was held liable for injury or damage resulting from an automobile collision on the highway. The collision occurred because the driver's vision was allegedly obscured by smoke which was negligently allowed to emanate from such premises. In *Skelly Oil Co. v. Johnston*, 151 S.W.2d 863 (Tex.Civ.App.—Amarillo 1941, writ ref'd), a motorist's automobile skidded on a wet spot caused by water negligently

blown onto the highway from the cooling towers of the company's gasoline manufacturing plant located on land adjacent to highway. [In that case, t]he company was held liable.

*Golden Villa*, 674 S.W.2d at 350.

■ We also note that occupiers of premises adjacent to public walkways have a duty of care to passing pedestrians. *See, e.g., Northwest Mall, Inc. v. Lubri–Lon Intern., Inc.*, 681 S.W.2d 797, 802 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (citing *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *Beaumont Iron Works Co. v. Martin*, 190 S.W.2d 491, 495 (Tex.Civ. App.—Beaumont 1945, writ ref'd w.o.m.); *Skelly Oil Co.*, 151 S.W.2d 863). For example, in *Beaumont Iron Works Co.*, the owner of a building adjacent to a sidewalk was held to owe a duty of care to pedestrians, including maintenance of window panes to prevent their falling.

### Discussion

■ Appellee bases its argument regarding control of the curb on the following syllogism: The legislature has delegated to home rule cities exclusive dominion, control, and jurisdiction in, over and under the public *streets*, avenues, alleys, highways and boulevards within those cities,[2] *Dallas/Fort Worth Intern. Airport Bd. v. City of Irving*, 854 S.W.2d 161, 173 (Tex.App.—Dallas 1993), *vacated*, 868 S.W.2d 750 (Tex.1993); "sidewalk" means the portion of the *street* that is between a *curb* or lateral line of a roadway and the adjacent property line, and intended for pedestrian use, Texas Transportation Code, section 541.302(16); therefore, the curb upon which appellant was standing was subject to the exclusive control of the City of Corpus Christi (implying that appellee would therefore have no duty to appellant). We do not accept appellee's contention that it is thereby absolved of duty as a matter of law.

The duty argument urged by appellee disregards the cases cited above which recognize the proposition that a landowner may not negligently injure parties lawfully using the street or sidewalk adjacent to their prop-

2. Corpus Christi is a home rule city.

erty. *See, e.g., Alamo Nat'l Bank,* 616 S.W.2d at 910 ("The owner or occupant of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel. The owner or occupant is liable for any injury that proximately results from his negligence."). Appellee's syllogism is based on arguably inapposite authorities; we also believe that its argument disingenuously ignores the fact that appellee was lawfully standing on the curb adjacent to Spohn Hospital, where she worked.

▆▆▆▆ Appellee analogizes the instant lawsuit to two cases which affirmed the granting of summary judgment in favor of defendants, *Barefield v. City of Houston,* 846 S.W.2d 399 (Tex.App.—Houston [14th Dist.] 1992, writ denied), and *LaFleur v. Astrodome–Astrohall Stadium Corp.,* 751 S.W.2d 563 (Tex.App.—Houston [1st Dist.] 1988, no writ). We find those cases distinguishable, in that neither case involved an assault on the curb adjacent to the defendant's property.[3] Rather, the attacks in *Barefield* and *LaFleur* occured at locations significantly more removed from the defendant's property than in the instant case. It is also uncertain whether the *LaFleur* plaintiff was an invitee *vis-a-vis* the defendant.[4]

The very proximity of the curb upon which appellant was stabbed to appellee's property raises a factual issue as to appellee's power to control and expel third-party wrongdoers. Certainly, appellee was in a better position than appellant to thwart appellant's attacker, as it maintained a roving security patrol, and must have been aware of the environment around Spohn Hospital, which appellant's experts characterized as dangerous. In any event, we are, axiomatically, obligated to accept appellant's evidence in this regard as true.

Importantly, appellee does not dispute that the stabbing occurred, or that it occurred as appellant was leaving her place of employment, Spohn Hospital. It seems beyond question that appellant was an invitee *vis-a-vis* appellee; accordingly, appellee was required to protect appellant from reasonably foreseeable criminal acts. Appellee hopes to avoid this issue by arguing that, because appellant had stepped across the imaginary line separating Spohn Hospital and the curb, she also withdrew—as a matter of law—from the ambit of appellee's duty. We cannot support this proposition.

---

3. *Barefield* was a suit against the City of Houston (owner of the Sam Houston Coliseum), a concert promoter, and the security company hired by the promoter; the plaintiffs had attended a concert, and exited the premises; plaintiffs were confronted by a group of hoodlums across the street from the concert hall; an altercation ensued in which one plaintiff was stabbed; while returning back across the street to the concert hall, the other plaintiff was hit by a motorist; the confrontation which set the factual underpinning of the case occurred across the street from the concert hall. 846 S.W.2d at 401–02. The City of Houston was held to be immune. *Id.* at 405–06. Because the events underlying *Barefield* occurred *across the street* from property occupied by the defendants, it does not control our disposition of the instant case.

*LaFleur* was a suit against the operators of the Astrodome by a television news photographer who had been at the Astrodome to tape an interview; after the interview, the photographer left the Astrodome complex and began to drive down the street; as she left, she noticed a crowd of people standing *across the street* from the Astrodome; she stopped on the street, exited her vehicle, and approached the crowd; after a brief interaction with the crowd, she began to return to her vehicle; as she did so, a member of the crowd assaulted her. 751 S.W.2d at 563–64. The factual recitation of the opinion seems to indicate that the attack occurred across the street from the Astrodome. *Id.* In this respect, *LaFleur* does not appear to be on point with the instant facts.

4. The duty of an owner or occupier *vis-a-vis* a licensee is to not injure her willfully, wantonly, or through gross negligence. *See, e.g., Mendez v. Knights of Columbus Hall,* 431 S.W.2d 29, 32 (Tex.Civ.App.—San Antonio 1968, no writ). It has been stated that the licensee takes the premises as she finds them and that the owner owes her no duty to maintain them in a reasonably safe condition. *Id.* In determining whether a person is an invitee or a licensee upon the premises of another, the general test is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render her presence of mutual aid to both, or whether her presence on the premises was for her own convenience, or on business with others than the owner of the premises. *Id.*

Our decision in the instant case is not at variance with our recent holding in *Gonzalez v. South Dallas Club,* 951 S.W.2d 72 (Tex. App.—Corpus Christi, 1997, n.w.h.), a case in which we affirmed the summary judgment granted in favor of the defendant on plaintiff's negligence theories. In *Gonzalez,* the attack made the basis of the appellant's suit occurred approximately one mile distant from the appellee's premises. *Id.,* at 73–74. We found this nexus too attenuated to support the appellant's negligence theories, "[u]nder the facts of this case[.]" *See id.,* at 75. The instant case is materially different from *Gonzalez* insofar as the absolute lack spatial separation between the situs of appellee's premises and the situs of the attack in the instant case. To illustrate this point, suppose that, in both *Gonzalez* and the instant case, the appellee had installed state-of-the-art security lighting systems on their respective premises. In the *Gonzalez* case, the situs of the attack would not have been illuminated; in the instant case, it would have been. *Gonzalez* is distinguishable—factually and legally—from the instant case.

All points of error are sustained. The judgment of the trial court is REVERSED, and this cause is REMANDED for further proceedings consistent with this opinion.